UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| YOHAN BIC FLAME-BEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-01986-SEB-TAB |
| ) | |
| MOORE Clerk's Entry of Default entered on ) | |
| 11/18/2024, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON PLAINTIFF'S SECOND MOTION FOR AWARD OF DAMAGES**

This matter relates to the default judgment previously entered against Defendant Samuel Moore ("Mr. Moore"), a former officer at the New Castle Correctional Facility, on the issue of his liability to Plaintiff Yohan Bic Flame-Bey ("Mr. Flame-Bey") for allegedly confiscating and destroying and/or losing Mr. Flame-Bey's legal and religious documents, in violation of the First Amendment to the United States Constitution. Now before the Court is Mr. Flame-Bey's Second Motion for Award of Damages, which reflects Mr. Flame-Bey's request for $23,694.77 in compensatory and punitive damages, pursuant to 42 U.S.C. § 1983. Dkt. 255. That motion shall be **GRANTED in part** and **DENIED in part**. Dkt. 255.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55 outlines the two stages of a default proceeding: "the establishment of the default, and the actual entry of a default judgment." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2016). The "effect of an entry of default (step one) is that 'upon

1

default, the well-pleaded allegations of a complaint relating to liability are taken as true.' " *VLM Food Trading Intern., Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)) (internal alterations omitted). Entry of default judgment (step two) establishes, as a matter of law, that the defendant is liable to the plaintiffs on each cause of action alleged in the complaint. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). By contrast, the plaintiffs' mere allegations of damages are "not deemed true"; rather, "[t]he district court must . . . conduct an inquiry . . . to ascertain the amount of damages with reasonable certainty." *In re Catt*, 368 F.3d at 793 (internal citations omitted). Such an inquiry may be accomplished without a hearing, if "the amount is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co.*, 722 F.2d at 1323.

## DISCUSSION

We assume the parties' familiarity with the underlying facts and circumstances as they are detailed in the Amended Complaint and our summary judgment order, dkt. 125, 218, and thus proceed to our analysis below.

When a state actor is found liable for violating an individual's constitutional rights, § 1983 "may authorize an award of damages" encompassing "compensation for intangible emotional harm and even nominal damages where no actual injury occurs." *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018), *reh'g denied* (June 8, 2018). "Compensatory damages in § 1983 cases are ordinarily determined according to the principles derived from the common law of torts," which includes damages for "out-of-pocket loss and other monetary

2

harm" as well as for "personal humiliation, mental anguish, and suffering." *Hagge v. Bauer*, 827 F.2d 101, 109 (7th Cir. 1987) (citation modified). The party seeking an award for compensatory damages must adduce actual proof of his injuries. *Id.* (citation modified). Compensatory damages are concerned with "actual, not imagined, damages," and courts may "reduce an award not supported with proof." *Id.*

Punitive damages may also be available to a prevailing § 1983 litigant. *Smith v. Wade*, 461 U.S. 30, 35 (1983). "Punitive damages are appropriate when the defendant acted wantonly or willfully or was motivated in his actions by ill will or a desire to injure." *Hendrickson v. Cooper*, 589 F.3d 887, 894 (7th Cir. 2009). The purpose of punitive damages is to "punish blameworthy behavior and deter defendants from committing future bad acts—the more reprehensible a defendant's conduct and the more easily a defendants can conceal violations, the higher the punitive damages." *Beard v. Wexford Health Sources, Inc.*, 900 F.3d 951, 953 (7th Cir. 2018) (citations omitted). Our assessment of punitive damages includes consideration of "the reprehensibility of the defendant's conduct, the ratio between punitive and compensatory damages, and any civil penalties that punish similar behavior." *Id.* at 953–53.

In this case, Mr. Flame-Bey has itemized his request for compensatory damages as follows:

- **$5,000** for the entry of judgment against him in *Flame-Bey v. Mitchell*, No. 1:19-cv-04067-SEB-MJD, dkt. 67 (S.D. Ind. May 26, 2021) (entry of final judgment) (hereinafter "*Flame-Bey I*");

3

- **$5,000** for the entry of judgment against him in *Flame-Bey v. Rewerts*, No. 1:19-cv-04153-JRS-MJD, dkt. 74 (S.D. Ind. May 25, 2021) (entry of final judgment) (hereinafter "*Flame-Bey II*");
- **$976.00** for the cost of replacing the trial transcript in *State of Indiana v. Smith*, No. 49G03-1109-FA-063851 (Marion Sup. Ct. filed on Sept. 7, 2011);[1]
- **$634.00** for the cost of replacing the trial transcript in *State of Indiana v. Flame*, No. 49G03-1109-FA-064634 (Marion Sup. Ct. filed on Sept. 13, 2011);
- **$372.00** for the cost of replacing the trial transcript in *State of Indiana v. Smith*, No. 49G03-1109-FA-065179 (Marion Sup. Ct. filed on Sept. 12, 2011);
- **$231.32** for the cost of replacing *pre*-trial transcripts in the three aforementioned state criminal cases;
- **$100.00** for the replacement of religious materials; and
- **$381.45** for the cost of legal mail and medical records associated with this litigation.

**Damages Relating to *Flame-Bey I & II* Legal Documents**

In 2019, Mr. Flame-Bey initiated two civil rights lawsuits in this district (*Flame-Bey I* and *II*, respectively) relating to perceived deficiencies in the quality of his medical treatment during his time as an inmate at the Pendleton Correctional Facility. Flame-Bey Aff. ¶ 3, dkt. 256-1. In early December 2020, the defendants in *Flame-Bey II* moved for summary judgment, No. 1:19-cv-04153-JRS-MJD, dkt. 60, 64 (S.D. Ind. Dec. 2, 2020), as

---

[1] In some of Mr. Flame-Bey's underlying state-court criminal proceedings, he is referred to by the name "Vincent Smith."

did the *Flame-Bey I* defendants approximately one month later in January 2021, No. 1:19-cv-04067-SEB-MJD, dkt. 59 (S.D. Ind. Jan. 8, 2021).

On March 9, 2021, as the summary judgment motions pended, Mr. Flame-Bey witnessed Mr. Moore "take possession of two cardboard boxes" containing, *inter alia*, drafts of his summary judgment responsive briefs as well as corresponding designations of evidence. Flame-Bey Aff. ¶¶ 1, 6, dkt 256-1. Despite Mr. Moore's assurances that Mr. Flame-Bey's litigation materials would be mailed to the appropriate court, Mr. Flame-Bey later discovered that neither set of his summary judgment materials had been mailed and/or docketed. In May 2021, both summary judgment motions were granted in the defendants' favor, without the benefit of any response from Mr. Flame-Bey. *Flame-Bey I*, No. 1:19-cv-04067-SEB-MJD, dkt. 66 (S.D. Ind. May 26, 2021) (order granting defendants' motion for summary judgment); *Flame-Bey II*, No. 1:19-cv-04153-JRS-MJD, dkt. 73 (S.D. Ind. May 25, 2021) (order granting defendants' motion for summary judgment). Mr. Flame-Bey avers that judgment was entered against him in each lawsuit "as a result of [his] failure to respond . . . ." Flame-Bey Aff. ¶ 11, dkt. 256-1.

When Mr. Flame-Bey's deposition was taken during an earlier phase in this litigation, he testified that he had discovered the entry of judgment against him in both cases in June 2021, when he received a copy of the *Flame-Bey II* order and checked the status of both cases online through LexisNexis. *See* Flame-Bey Dep. 42:17–44:16, dkt. 176-2 (testifying that "the first of June 2021" "might have been" when he received notice of the *Flame-Bey II* decision). Although Mr. Flame-Bey considered moving for relief from judgment in *Flame-Bey I* and *II*, he concluded that such a motion was unlikely to succeed

5

and ultimately chose not to pursue any avenue of relief in those cases. *See id.* at 44:17–46:18.

With regard to the instant motion for damages, Mr. Flame-Bey contends that $10,000 is a reasonable compensatory award for the judgments entered against him in *Flame-Bey I* and *II*, since he "estimate[s] each case would have reached a reasonable award of $5,000 each." Flame-Bey Aff. ¶ 12, dkt. 256-1.

Mr. Flame-Bey has failed to adduce actual (never mind persuasive) proof that $10,000 is a reasonable compensatory award for his unsuccessful lawsuits. While the loss of one's work product can represent a strategic setback in a litigation, Mr. Flame-Bey has failed to show how the unfavorable rulings in his prior civil cases were caused solely by Mr. Moore's alleged misconduct. Moreover, Mr. Flame-Bey failed to undertake any post-judgment efforts to mitigate his damages; his own deposition testimony establishes that, though he considered seeking relief from judgment, he declined to do so. *See* Flame-Bey Dep. 42:17–46:18, dkt. 176-2. Mr. Flame-Bey's $5,000 estimation of a "reasonable award" is therefore, in our view, wholly unsubstantiated, relying entirely on nothing more than his own barebones speculation as to an amount he thinks he could ultimately have recovered in *Flame-Bey I* and *II*. For these reasons, we regard Mr. Flame-Bey's $10,000 estimation as to the value of his prior cases to be speculative, excessive, and unsupported by actual proof. Accordingly, Mr. Flame-Bey shall be awarded $25.00 for each case in which Mr. Moore improperly disposed of Mr. Flame-Bey's summary judgment response papers, for a total award of **$50.00**.

6

**Transcript Costs**

Mr. Flame-Bey requests a sum total of $2,213.32 for the cost of pre-trial and trial transcripts from his underlying state criminal proceedings, copies of which were allegedly among the papers wrongfully confiscated and displaced by Mr. Moore on March 9, 2021. In his supporting affidavit, Mr. Flame-Bey maintains that these transcripts were essential to his pursuit of "post-conviction relief related to [his] criminal matters." Flame-Bey Aff. ¶ 14, dkt. 256-1.[2] To substantiate the value of these lost papers, Mr. Flame-Bey has submitted two letters from a Marion County court reporter (dated October 4, 2018, and December 18, 2019, respectively) itemizing the costs associated with the production of his trial and pre-trial transcripts. Dkt. 256-2; dkt. 256-3. Mr. Flame-Bey avers that he "was unable to repurchase th[e]se transcripts at the time due to lack of funds," and he "still ha[s] been unable to repurchase them." Flame-Bey Aff. ¶ 21, dkt. 256-1.

Mr. Flame-Bey's deposition testimony belies his allegation that Mr. Moore confiscated the trial transcripts for all three criminal matters. Although Mr. Flame-Bey did testify that "part of [his] transcripts were in the [two] boxes that [Mr.] Moore took," he also reported having had seven untouched boxes of related materials. Flame-Bey Dep. 47:3–6, dkt. 176-2. Notably, Mr. Flame-Bey also testified that "basically like half of [his] transcripts

---

[2] Based on our review of the underlying (and publicly available) state court dockets, it appears that Mr. Flame-Bey filed direct appeals in each of his criminal cases and has notified the Marion Superior Court with regard to his filing a petition for post-conviction relief. *State of Indiana v. Flame*, No. 49G03-1109-FA-064634 (Marion Sup. Ct. Aug. 12, 2024) (correspondence between Mr. Flame-Bey and the Marion Superior Court re: petition for post-conviction relief).

from" cause no. 49G03-1109-FA-063851[3] "are gone," while he "still ha[s]" the transcripts from his two other state criminal cases. *Id.* at 47:7–15. *But see id.* at 36:19–23 (recalling that, after the March 9th incident, he had "[a]ll of his transcripts").

Based on Mr. Flame-Bey's own deposition testimony, we fail to see how an award of $2,213.32 for the replacement of *three* trial transcripts is reasonable. At most, Mr. Moore confiscated transcript materials relating to only one criminal case. Mr. Flame-Bey's award of compensatory damages shall be reduced by $1,006.00—the cost of the trial transcripts from *Flame*, No. 49G03-1109-FA-064634 (Marion Sup. Ct.) ($634.00) and *Smith*, No. 49G03-1109-FA-065179 (Marion Sup. Ct.) ($372.00). An award of **$1207.32,** reflecting the total costs for the *Smith*, No. 49G03-1109-FA-063851 (Marion Sup. Ct.) trial transcript ($976.00) as well as his pre-trial transcripts ($231.32) shall be allowed. *See* dkt. 256-2 at 4; dkt. 256-3 at 4–5.

**Religious Materials**

Mr. Flame-Bey, a practicing Moorish American, requests $100.00 for the replacement of his religious materials, namely, a copy of the Moorish American Constitution, "seven additional acts," and 101 questions and answers from the Moorish Questionnaires, which he maintains were wrongfully taken from him. Flame-Bey Aff. ¶¶ 29, 38–39, dkt. 256-1. Mr. Flame-Bey avers that, since the time of the loss of these materials, he has been unable to practice his religion piously, which has impacted his

---

[3] In his deposition, Mr. Flame-Bey referred to this criminal matter as "the Lopez case," apparently in reference to the victim of the offenses for which he was convicted. *See* Flame-Bey Dep. 47:13–15, dkt. 176-2; *State of Indiana v. Smith*, No. 49G03-1109-FA-063851 (Marion Sup. Ct. filed on Sept. 8, 2011) (charging information containing victim's identity).

8

mental health. *Id.* ¶ 36. In the pending motion, Mr. Flame-Bey "estimate[s] [that] the cost to replace [his] religious materials is approximately $100.00." *Id.* ¶ 39.

Although Mr. Flame-Bey has broadly described the negative emotional impact he has experienced, he has not "establish[ed] an objective basis for quantifying the loss" of his copies of the Moorish American Constitution, seven additional acts, and 101 questions and answers from the Moorish Questionnaires. *Taliferro v. Augle*, 757 F.2d 157, 162 (7th Cir. 1985). To that end, we view his $100 estimation as excessive and unreasonable in light of the general availability of religious texts. Absent actual proof of the costs of replacing his religious materials, we do not view an award of $100 to be appropriate. Mr. Flame-bey shall nonetheless be awarded **$25.00** in compensatory damages for the loss of his religious materials.

### Litigation Costs

In seeking to recoup the costs of legal mail and medical records associated with this action, Mr. Flame-Bey requests an award of $381.45. *See* dkt. 256-5 (fifty-five remittance requests). Mr. Flame-Bey does not distinguish between his legal mail and medical record expenditures, nor does he specify what costs he incurred with regard to his claims against Mr. Moore, who is only one of more than a dozen individual defendants initially named in this lawsuit. *See* dkt. 125. Because Mr. Flame-Bey is not entitled to recover the litigation costs for unsuccessful claims bearing no discernable relation to Mr. Moore's conduct, an award of $381.45, which reflects the sum total of his expenditures, is excessive. Thus, Mr. Flame-Bey is not entitled to any recoverable costs relating to the prosecution of his claims against Mr. Moore.

### **Punitive Damages**

Mr. Flame-Bey requests $11,000 in punitive damages relating to his lack of success in *Flame-Bey I* and *II*; the loss of his religious materials; and profit losses from the alleged destruction of approximately 300 self-composed songs that were in the boxes of confiscated materials and which he intended to sell. As discussed above, punitive damages are appropriate when a defendant has acted "wantonly or willfully or was motivated in his actions by ill will or a desire to injure." *Hendrickson*, 589 F.3d at 894. Whether punitive damages are appropriate depends on "the reprehensibility of the defendant's conduct, the ratio between punitive and compensatory damages, and any civil penalties that punish similar behavior." *Beard*, 900 F.3d at 953–53. The degree of reprehensibility is the most important factor. *Henrickson*, 589 F.3d at 894.

Here, Mr. Flame-Bey's supporting affidavit does not contain any allegations allowing us to fairly regard Mr. Moore's conduct in this case (i.e., taking possession of two cardboard boxes containing Mr. Flame-Bey's papers) as rising to a degree of reprehensibility that warrants an award of punitive damages. Mr. Flame-Bey's request for punitive damages shall be denied accordingly.

### CONCLUSION

For the reasons detailed above, Mr. Flame-Bey's Second Motion for Award of Damages is **GRANTED in** part and **DENIED in part**. Dkt. 255. Mr. Flame-Bey is **AWARDED** compensatory damages in the amount of **$1,282.32**. His request for litigation costs and punitive damages, however, is **DENIED**.

Judgment consistent with this Order shall issue accordingly.

IT IS SO ORDERED.

Date: 12/16/2025

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

YOHAN BIC FLAME-BEY
148865
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

MOORE
5734 W. County Road 450 South,
Knightstown, IN 46148

Anthony Marino Eleftheri
DREWRY SIMMONS VORNEHM, LLP (Carmel)
aeleftheri@dsvlaw.com

Bryan Findley
CASSIDAY SCHADE LLP
bfindley@cassiday.com

Joseph A. Panatera
Cassiday Schade LLP
jpanatera@cassiday.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com